UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
ROMAN MAVASHEV,                                  :
                                                 :
                        Petitioner,              :
                                                 :               **OPINION AND ORDER**
        -against-                                :                  11-CV-3724 (DLI)
                                                 :
UNITED STATES OF AMERICA,                        :
                                                 :
                        Respondent.              :
-------------------------------------------------------- x
**DORA L. IRIZARRY, United States District Judge:**

On October 12, 2010, Roman Mavashev ("Petitioner" or "Mavashev") was convicted,

following a jury trial in the Eastern District of New York, of conspiracy to commit bank fraud, in

violation of 18 U.S.C. § 1349, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349,

and three substantive counts of bank fraud, in violation of 18 U.S.C. § 1344.  Petitioner was

sentenced to 120 months' imprisonment on each count to run concurrently, five years of

supervised release with special conditions on each count to run concurrently, and was ordered to

pay restitution in the amount of $2,784,753 and $500 in special assessments.  On August 2,

2011, Petitioner filed a motion ("Motion") pursuant to 28 U.S.C. §2255 seeking to vacate the

sentence imposed by this Court on the grounds that he received ineffective assistance of counsel

during his plea negotiations and trial.  In the interim, on appeal, the Second Circuit Court of

Appeals affirmed the conviction on February 29, 2012.  Petitioner now seeks an evidentiary

hearing and to be resentenced.  For the reasons below, Petitioner's Motion is denied in its

entirety.

# BACKGROUND

## I.    Factual Background

Petitioner, an attorney specializing in real estate transactions, was arrested in August 2008 and charged with conspiracy to commit bank fraud (18 U.S.C. § 1349), conspiracy to commit wire fraud (18 U.S.C. § 1349), and three substantive counts of bank fraud (18 U.S.C. § 1344). (Indictment, Docket No. 08-CR-0902, Docket Entry 9.) The charges stemmed from his ownership and operation of a mortgage brokerage firm called New Generation Funding from approximately January 2005 through December 2005. (*See id.*)

## II.    Plea Negotiations

Petitioner was represented by counsel Albert Dayan, Esq. prior to his arrest, through plea negotiations and at trial. Several months before trial, Dayan recruited a senior and experienced trial attorney, Robert Koppelman, Esq., to be co-trial counsel. (Memorandum of Law in Support of § 2255 Motion ("Pet. Mem."), Docket Entry No. 1, at 7.) Petitioner does not raise any claims of ineffective assistance of counsel against Mr. Koppelman.

On February 17, 2009, the government sent Mr. Dayan a proposed written plea agreement. (Pet. Mem. at 6; Plea Agreement, Docket Entry No. 1, Exhibit D.) The plea offer would have allowed Petitioner to plead guilty to count one of the indictment, conspiracy to commit bank fraud, which carried a penalty of zero to 30 years of imprisonment. (Plea Agreement at 1.) In exchange, the government agreed to dismiss the remaining counts of the indictment, take no position as to where within the United States Sentencing Guidelines ("Guidelines") range determined by the Court the sentence should fall and make no motion for an upward departure under the Guidelines. (Plea Agreement at 6-7.) While this plea agreement set forth the government's estimate of the applicable Guidelines range, which was 70-87 months

with early acceptance of responsibility, and assuming Petitioner fell within Criminal History Category I, the agreement explicitly stated that the estimate was not binding on the government, the Probation Department, or the Court.  (Plea Agreement at 3.)

Petitioner contends that Mr. Dayan did not furnish this proposed agreement to him nor discuss its express terms with him.    (Pet. Mem. at 6.)  Petitioner alleges that Mr. Dayan conveyed to him that the government had made an offer, and simply stated that it was a "high" number that would go down as the case went forward.  (*Id.*)  Petitioner further contends that Mr. Dayan did not discuss with him "the statutory sentencing exposure, or explain the workings of the sentencing guidelines with regard to adjustments, enhancements and the role of monetary loss on the calculation of the sentence."  (*Id.*)

Mr. Dayan contests Petitioner's account and states, "when I received the government's written plea agreement, I thoroughly reviewed and discussed the plea agreement with Mavashev when both of us were in my office."  (Affidavit of Albert Dayan ("Dayan Aff."), Docket Entry No. 11, at 2.)  Mr. Dayan adds, "Moreover, using the Federal Sentencing Guidelines Handbook, I explained to him the workings of the specific guidelines in relation to his case."  (*Id.*)  Lastly, Mr. Dayan alleges that, in addition to advising Petitioner of the estimated guideline range contained in the written plea agreement, *i.e.* 70 to 87 months, he also made it clear to Petitioner "that if [Petitioner] went to trial the sentencing court could impose a sentence significantly greater than that estimated in the written plea agreement as the guidelines range would increase, at the very least, because he would lose the 3-level downward adjustment for acceptance of responsibility."  (*Id.* at 2-3.)

## III.    Reverse Proffer

Petitioner did not accept the government's plea offer.  The government asserts, "Dayan

told the government that his client would not accept the plea offer because the sentencing range was unacceptably high to Mavashev." (Government's Reply in Opposition to Section 2255 Petition ("Govt. Mem."), Docket Entry No. 7, at 3.) Mr. Dayan also allegedly "expressed [to the government] that Mavashev was concerned about losing his law license, and thus his livelihood, if he pled guilty to a felony." (*Id.*) The government notes that, after a number of discussions between the government and Mr. Dayan regarding a possible resolution of the case prior to trial, Mr. Dayan asked that the government provide a "reverse proffer," which the government agreed to do. (*Id.*)

Petitioner, Mr. Dayan and Mr. Koppelman all attended the reverse proffer. (Pet. Mem. at 7.) The government contends that during the reverse proffer, it "outlined some of the strongest evidence against Mavashev and also discussed the sentencing implications of a conviction." (Gov. Mem. at 3.) The government adds that it "went through the written plea agreement and explained the Guideline enhancements that it believed were applicable. . . .[and] emphasized repeatedly that the Guidelines range would increase with a trial, due to the loss of acceptance of responsibility, and that the continued investigation leading up to trial may result in further information that would warrant a higher Guidelines range." (*Id.*) In his detailed affidavit, Mr. Dayan corroborates the government's narrative about what occurred at the reverse proffer. (Dayan Aff. at 2-3.) In his affidavit, Petitioner notes that plea negotiations occurred at this reverse proffer, but does not comment on whether the government discussed the February 17, 2009 plea offer. (Affidavit of Roman Mavashev ("Pet. Aff."), Docket Entry No. 1, Exhibit A, at 5-6.) The government maintains that the only offer it extended during the course of this case was the February 17, 2009 written plea agreement and it was this agreement that was discussed at the reverse proffer.

## IV. Trial and Sentence

In a trial before this Court that concluded on March 11, 2010, a jury found Petitioner guilty on all five counts of the superseding indictment. On October 12, 2010, the Court sentenced Petitioner to 120 months' incarceration on each count to run concurrently, five years of supervised release with special conditions on each count to run concurrently, and was ordered to pay restitution in the amount of $2,784,753 and $500 in special assessments. (Minute Entry for 10/12/2010 Proceedings, Docket No. 08-CR-902, Docket Entry No. 111.) Petitioner appealed the final judgment of conviction and filed the instant motion while that appeal was pending before the Second Circuit Court of Appeals. This Court stayed the motion pending resolution of the appeal. On appeal, Petitioner claimed the Court erred in: (1) giving a conscious avoidance charge that itself was erroneous; (2) admitting other crimes evidence; and (3) admitting certain expert testimony. In addition, Petitioner claimed prosecutorial misconduct on summation, the questioning of the government's case agent violated Petitioner's Fifth Amendment rights, and the sentence imposed was substantively unreasonable. The Second Circuit affirmed Petitioner's judgment of conviction in a summary opinion. *United States v. Mavashev*, 455 Fed. Appx. 107 (2d Cir. 2012).

## V. Section 2255 Motion

In the instant motion, Petitioner asserts that Mr. Dayan provided him constitutionally ineffective assistance of counsel. The core of Petitioner's claim is that Mr. Dayan failed to provide adequate assistance with regard to plea negotiations with the government. Petitioner also claims that Mr. Dayan failed to investigate the case properly, and that proper investigation would have brought to light further incriminating evidence earlier in the procedural history of the case and, thus, would have led Mavashev to accept the government's plea offer before trial.

Finally, Petitioner claims defense counsel's performance at trial as deficient. Petitioner does not assert that Mr. Koppelman, who also attended the reverse proffer and was co-trial counsel with Mr. Dayan, was constitutionally ineffective. For the reasons set forth below, the motion is denied in its entirety.

## DISCUSSION

### I.   Section 2255 – Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that such sentence was illegally imposed. 28 U.S.C. § 2255(a). Section 2255 relief is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal citations and quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal citation and quotation marks omitted).

#### a.   Section 2255 Evidentiary Hearing

Section 2255 also provides that, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

A defendant seeking a hearing on an ineffective assistance of counsel claim "need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that he will

necessarily succeed on the claim." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (internal quotation marks omitted). To warrant a hearing, a petitioner's "application must contain assertions of fact that [the] petitioner is in a position to establish by competent evidence." *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987). "With respect to a claim that counsel's ineffective assistance led to the rejection of a plea offer that, properly informed, would have been accepted, a petitioner seeking a hearing must proffer arguably credible evidence of a *prima facie* case that, but for counsel's improper advice, the petitioner would have accepted the plea offer." *Puglisi*, 586 F.3d at 215. Moreover, "[t]he procedure for determining whether a hearing is necessary is in part analogous to . . . a summary judgment proceeding. . . . If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." *Id.* at 213.

However, "[a]iry generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." *Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) (quoting *Aiello*, 814 F.2d at 113-14). Similarly, a court is not required to presume the credibility of factual assertions "where the assertions are contradicted by the record in the underlying proceeding." *Puglisi*, 586 F.3d at 214. Moreover, "'[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'" *Id.* at 213 (quoting Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts). A district court is permitted to "use methods under [s]ection 2255 to expand the record without conducting a full-blown testimonial hearing." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977) (stating that courts "may employ a variety of measures in an effort to avoid the need for an evidentiary hearing")). Possible methods available to a court to supplement the record include "'letters, documentary

evidence, and, in an appropriate case, even affidavits.'" *Chang*, 250 F.3d at 86 (quoting *Raines v. United States*, 423 F.2d 526, 529-30 (4th Cir. 1970) (footnote omitted)).  Ultimately, the district court must exercise its discretion to conclude whether in light of the amassed record a hearing would "offer any reasonable chance of altering its view, of the facts."  *Chang*, 250 F.3d at 86.

Here, in addition to Petitioner's motion, the Court had the benefit of reviewing the government's memorandum of law, affidavits from Mr. Dayan and Mr. Koppelman, and the written plea agreement.  For the reasons set forth below, no evidentiary hearing is necessary.

## II.  Ineffective Assistance of Counsel

Petitioner raises an ineffective assistance of counsel claim based on three alleged shortcomings in his representation by Mr. Dayan.[1]  The Court must evaluate Petitioner's claim of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms."  *Id.* at 687-88.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  Second, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  As explained by the Supreme Court, the order of analysis of the two Strickland prongs — performance and prejudice — is at the discretion of the district court.  The *Strickland* Court noted:

---

[1] Petitioner did not raise an ineffective assistance claim on direct appeal.  However, "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255," even when a defendant is represented by new counsel on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 508-09 (2003).  Therefore, although Petitioner failed to appeal this issue directly, he is not procedurally barred from requesting collateral review of counsel's adequacy.

[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id*. at 694.

Thus, if the district court finds that there is no prejudice, it need not reach the performance prong. *See Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (stating that courts need not resolve the *Strickland* performance prong if the prejudice prong is more readily resolved).

### a. Petitioner Was Not Prejudiced in Plea Negotiations

Turning to the merits, Petitioner claims that he received ineffective assistance because his attorney "failed to apprize (*sic*) [him] of the terms of the government's initial plea offer, choosing instead to communicate only that it was 'too high' and it would improve as the case went forward." (Pet. Mem. at 29.) Petitioner also alleges that "[w]ith regard to the government's last two offers, [counsel] . . . unilaterally rejected the [second] offer at the 'reverse-proffer' session without conferring with [Petitioner] in even the most rudimentary fashion," and declined the third offer because of a false understanding of Petitioner's sentencing exposure. (*Id.* at 29-30.) Petitioner contends that Mr. Dayan represented to him that he would get no more than three years' imprisonment if convicted at trial, and "that the government's last offer of 37 months was the ceiling for his post-conviction sentence." (*Id.* at 29-30.) The government asserts that its initial plea offer was the only plea deal it offered to Petitioner. (Gov. Mem. at 2.) After Petitioner was convicted at trial, the Court sentenced him to a 120-month term

of imprisonment.

Petitioner argues that competent counsel would have advised Petitioner differently, which would have led Petitioner to accept the government's alleged third proposal. Petitioner has not met his burden on this claim.

Under the Sixth Amendment, a defendant is entitled to effective assistance of counsel in connection with plea negotiations, because one of defense counsel's basic duties is to advise his client on whether to accept a plea offer from the government. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."); *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) ("[C]ounsel has a professional obligation to adequately inform [his] client about the considerations that are relevant to [his] client's decision to accept or deny a plea bargain."); *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (noting that defense attorneys have "a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government").

Consequently, Defense counsel "has the duty to communicate formal offers from the prosecution [and] to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012); *see also Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) ("As part of this advice counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed."). An attorney's failure to communicate a plea offer to his client or advise his client adequately about the decision to plead guilty may constitute a constitutionally deficient performance. *See, e.g.*, *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010); *Cullen v. United States*, 194 F.3d

401, 404 (2d Cir. 1999); *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998); *Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996).

Even if an attorney's performance is objectively unreasonable, a petitioner must still prove prejudice under *Strickland's* second prong. *See Strickland*, 466 U.S. at 687. In order to prove prejudice, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 693). To prove actual prejudice in connection with plea proceedings, a petitioner must demonstrate "that the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384. Thus, the petitioner must show that: (1) "there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," (2) "that the court would have accepted its terms," and (3) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 1385.

"In the context of plea negotiations, a defendant can make this showing by producing both a sworn affidavit or testimony stating that he would have accepted or rejected a plea agreement but for counsel's deficient performance and also some additional 'objective evidence' supporting his claim." *United States v. Frederick*, 526 Fed. App'x 91, 93 (2d Cir. 2013) (citing *Gordon*, 156 F.3d at 381 and *Pham*, 317 F.3d at 182). A significant sentencing disparity may constitute such 'objective evidence' to support a finding that "the petitioner would have accepted the proposed plea offer if properly advised." *Raysor v. United States*, 647 F.3d 491, 495-96 (2d Cir. 2011) (noting that a large sentencing disparity between the lapsed plea offer and what the petitioner ultimately received constitutes such objective evidence) (citing and comparing cases).

"[H]owever, the district court must still find the [petitioner]'s evidence to the effect that he would have made a different decision but for his counsel's advice to be credible." *Frederick*, 526 Fed. App'x 91 (citing *Purdy*, 208 F.3d at 49 and *United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005)).

### i. The Government's Plea Offer

Here, Petitioner contends that the government extended three different pleas offers to him. (Pet. Mem. at 29.) He requests that the Court vacate the sentence imposed of 120 months of imprisonment, and re-sentence him to 37 months, which are the terms of the purported third and last government plea offer. (*See id.*) The first plea offer described by Petitioner came from the government on February 17, 2009 by way of a written plea agreement. (*See* Plea Agreement.) The government contends that its initial plea offer, which delineated a non-binding guidelines range of 70-87 months with early acceptance of responsibility, was the first and only plea deal it offered to Petitioner. (*See* Gov Mem. at 2.) Moreover, it was this plea offer that was discussed by the government with Petitioner and his two attorneys, Mr. Dayan and Mr. Koppelman at the reverse proffer session. For the reasons set forth below, Petitioner has failed to prove prejudice under *Strickland's* second prong with regard to the plea offer extended by the government.

First, to the extent that Petitioner asserts that he was not informed of the government's plea offer prior to the reverse proffer session, his recollection of events is "self-serving" and "insufficient to substantiate his claim." *United States v. Noorzai*, 953 F. Supp. 2d 499, 507 (S.D.N.Y. 2013); *see also Bhindar v. United States*, 2013 WL 171084, at *4 (S.D.N.Y. Jan. 16, 2013) ("Petitioner's now self-serving statements are insufficient to support a claim of ineffective assistance."). Mr. Dayan stated in a sworn affidavit, "when I received the government's written

plea agreement, I thoroughly reviewed and discussed the plea agreement with Mavashev when both of us were in my office." (Dayan Aff. at 2.) Petitioner admits that Mr. Dayan called him into his office to discuss the plea deal, but that that, during this discussion, Mr. Dayan only told him that "the number was high," without providing any substantive details, such as the sentencing range. (*See* Pet. Aff. at 4.) Given that Petitioner was an attorney, this self-serving statement defies credulity. This Court observed Petitioner at all court proceedings, including a lengthy, complex trial. Petitioner was fully engaged and actively participated in the proceedings with his attorneys. It is inconceivable that, at the very least, Petitioner would not have asked for more details.

Additionally, with regard to the written plea agreement, the government maintains that "Dayan told the government that his client would not accept the plea offer because the sentencing range was unacceptably high to Mavashev. He also expressed that Mavashev was concerned about losing his law license, and thus his livelihood, if he pled guilty to a felony." (Gov. Mem. at 4.) The Court credits the government's statement, which is corroborated by Mr. Dayan and is consistent with the circumstances surrounding this case. Petitioner's account that Mr. Dayan failed to discuss any terms of the agreement, and that Petitioner, as a lawyer, did not inquire into where the government stood is simply not credible. (*See* Pet. Mem. at 6; Pet. Aff. at 4.)

Second, even assuming *arguendo* that Mr. Dayan was deficient in conveying the terms of this plea to Petitioner, Petitioner was not prejudiced by this failure. Petitioner and his two attorneys, Mr. Dayan and Mr. Koppelman, attended the reverse proffer session, an unusual proceeding that the government held at the request of Mr. Dayan. Petitioner makes no claim that Mr. Koppelman failed to advise him concerning the plea offer. (*See generally* Pet. Aff.) The

government states that, during the session, it "discussed the sentencing implications of a conviction[,] . . . went through the written plea agreement and explained the Guideline enhancements that it believed were applicable." (Govt. Mem. at 3.) Moreover, the government adds that it "emphasized repeatedly that the Guidelines range would increase with a trial, due to the loss of acceptance of responsibility, and that the continued investigation leading up to trial may result in further information that would warrant a higher Guidelines range." (*Id.*)

Contrarily, Petitioner contends that the government never showed him the plea agreement at this session, and suggests, but never outright asserts, that the government never mentioned or explained the terms of the written plea agreement. (*See* Pet. Aff. at 4; Pet. Mem. at 7.) Instead, Petitioner contends that the government orally offered a plea agreement with a sentencing guideline range of 46-57 months. (*See* Pet. Aff. at 5.) The Court declines to credit Petitioner's suggestion that he remained unaware of the details of the government's initial plea offer even after this reverse proffer session, which occurred after Mr. Dayan, at a minimum, had alerted Petitioner to the existence of the government's first plea offer. Consequently, Petitioner fails to show any prejudice from Mr. Dayan's purported failure to provide him with details about the plea agreement when it was first offered by the government. The Court finds the government's more plausible and credible account of the reverse proffer session to be persuasive.

Lastly, to satisfy *Strickland's* prejudice prong, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 132 S. Ct. at 1409; *see also Puglisi*, 586 F.3d at 215 (citing *Aeid v. Bennett*, 296 F.3d 58, 63-64 (2d Cir. 2002) ("With respect to a claim that counsel's ineffective assistance led to the rejection of a plea offer that, properly informed, would have been accepted, a petitioner seeking a hearing must proffer arguably credible evidence.").

Nowhere in his sworn statement does Petitioner allege that he would have accepted the government's written plea agreement if Mr. Dayan had counseled him effectively. Petitioner also does not provide any objective evidence that he would have accepted the written plea agreement. Consequently, Petitioner fails to prove prejudice with regard to the plea agreement. *See United States v. Frederick*, 526 Fed. App'x at 93; s*ee, e.g.*, *United States v. Suri*, 2014 WL 3928605, at *5 (S.D.N.Y. Aug. 11, 2014) (denying ineffective assistance of counsel claim because "[Petitioner] has not plausibly alleged that he would have accepted any actual plea offer."); *Monk v. United States*, 2014 WL 3715112, at *6 (E.D.N.Y. July 23, 2014) (denying ineffective assistance of counsel claim because "Petitioner has failed to prove that he himself would have accepted the offer had he received it in a timely manner."); *Beltran v. United States*, 2013 WL 5510774, at *5 (S.D.N.Y. Sept. 26, 2013) (denying habeas where "Petitioner has failed to provide any objective evidence that he would have accepted a plea offer").

ii. **Petitioner's Claims of Informal Plea Discussions**

Petitioner alleges that the government was willing to extend a second plea offer at the reverse proffer "with a sentencing range of 46-57 months," and that Mr. Dayan rejected this offer without consulting with him. (Pet. Aff. at 7.) Petitioner also contends that Mr. Dayan later told him that "the government was making an offer of 37 months," which Petitioner states he did not accept based on Mr. Dayan's advice. (Pet. Aff. at 6-7.) The government asserts that it did not make any further plea offers to Petitioner after its initial proposal. (Gov. Mem. at 2, 4.) Petitioner has failed to plead facts to support the existence of any additional formal plea offers from the government apart from the initial February 17, 2009 written offer. At best, Petitioner has pled that the government extended informal plea offers and that his counsel failed to provide adequate advice regarding them. For the reasons stated below, these unsupported, self-serving

statements are insufficient to support Petitioner's claim of ineffective assistance of counsel.

Criminal defendants do not have a constitutional "right to be offered a plea [agreement], . . . nor a federal right that the judge accept it." *Frye*, 132 S. Ct. at 1410. However, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 132 S. Ct. at 1387. Here, defendant does not allege that a formal plea offer was extended to him after the initial written agreement was tendered, but rather claims that his counsel had ongoing discussions with the government that led to informal proposals. (*See* Pet. Aff. at 4-7.) Notably, there is absolutely nothing in the record that supports these allegations. Any attempt to extend *Lafler* to an informal plea offer must be rejected, as the distinction between formal plea offers and informal plea offers is significant. *See, e.g.*, *United States v. McCall*, 2014 WL 2581353, at *3 (N.D. Cal. June 9, 2014). (rejecting attempt to extend *Lafler* "to what counsel calls an 'informal plea offer'"). Necessarily, there is either a formal plea offer or, in its absence, mere discussions between defense counsel and the government. *See, e.g.*, *Samet v. United States*, 559 Fed. Appx. 47, 49 (2d Cir. 2014) (distinguishing between formal plea offers and informal plea negotiations).

Upholding the distinction between formal plea offers and informal plea negotiations is not without justification. The Supreme Court has cautioned that allegations of insufficiently communicated plea offers are easily fabricated after-the-fact, as is the case here. *See Frye*, 132 S. Ct. at 1408-09. Consequently, requiring "the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Id.* at 1409. As one court persuasively reasoned, "If the law were to hold that every 'informal plea offer' had to be communicated to defendant, then virtually every jury verdict of guilty would be forever

dogged by demands for evidentiary hearings under Section 2255, for it would be a rare case in which no conversations ever transpired between counsel." *McCall*, 2014 WL 2581353 at *3. On the other hand, a formal plea offer is a certain thing that is much harder to fabricate or mis-remember.

The Supreme Court's analysis regarding the nature of plea agreements also is instructive in this Court's finding that there was only one formal plea offer extended to Petitioner. The Supreme Court has recognized that plea agreements "are essentially contracts." *Puckett v. United States*, 556 U.S. 129, 137 (2009). In order for a contractual offer to exist, it must contain sufficiently definite terms to enable a fact finder to interpret and apply them. *See, e.g.*, *Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 135 (2d Cir. 2005) (discussing that "[f]ew principles are better settled in the law of contracts than the requirement of definiteness").

In the absence of any discussion of the charges to which Petitioner would acknowledge guilt, the factual basis for a plea, or restitution or forfeiture issues, the terms in either the purported second or third offer were not sufficiently definite to constitute a "formal plea offer." *See, e.g.*, *Merzbacher v. Shearin*, 706 F.3d 356, 369-70 (4th Cir. 2013) (reversing grant of habeas relief for ineffective assistance due to failure to communicate offer after finding that no formal plea offer was made where prosecution's offer "finalized only one leg of a putative plea agreement, the length of sentence[,] and did not finalize the other legs"); *Fanaro v. Pineda*, 2013 WL 6175620, at *5, 12 (S.D. Ohio Nov. 22, 2013) *report and recommendation adopted*, 2014 WL 325635 (S.D. Ohio Jan. 29, 2014) (no formal plea offer from "very general" telephone conversation in which prosecutor offered four-year sentence and restitution in exchange for guilty plea, as the "offer was never reduced to writing and the parties never discussed which, if any, of the charges pending against Petitioner would be dismissed should Petitioner plead guilty

and agree to a sentence of four years' imprisonment and an order of restitution in some unspecified amount"); *United States v. Waters*, 2013 WL 3949092, at *8 (E.D. Pa. July 31, 2013) ("While we have been unable to find any authority defining the requisite elements of a formal plea offer, it is clear that an oral discussion of the sentencing range for a possible plea agreement that does not include an agreement on the charges to which the defendant will plead guilty and the facts that he will admit, does not constitute a formal plea offer.").

Here, Petitioner asserts, "Had I known that the court could have sentenced me to 10 years after trial, I would have accepted the government's last offer of 37 months and pleaded guilty." (Pet. Aff. at 7.) Even if the Court were to assume Petitioner's assertions to be true, he has not alleged facts sufficient to find that the government made more than one formal plea offer. Where, as here, Petitioner has alleged only that broad sentencing guideposts were discussed, he clearly cannot establish the deficient performance prong under *Strickland*. *See, e.g.*, *Gilchrist v. United States*, 2012 WL 4520469, at *19 (D. Md. Sept. 27, 2012) ("Because the record supports that no formal offer was made here, Petitioner's claim must fail."); *Johnson v. United States*, 860 F. Supp. 2d 663, 904 (N.D. Iowa 2012) ("Logic dictates . . . [that] the petitioner must begin by proving that a plea agreement was formally offered by the government"); *see also Ramos v. United States*, 2012 WL 1109081, at *5 (D. Mass. Mar. 30, 2012) (denying habeas relief and finding "[t]he circumstances in *Frye* and *Lafler* are factually distinguishable because the government did not offer [the petitioner] a plea agreement.").

For these reasons, defense counsel's duties with regard to a petitioner's Sixth Amendment right to effective counsel are limited to formal offers, which Petitioner concedes was made only once. *See, e.g.*, *United States v. Petters*, 986 F. Supp. 2d 1077, 1082 (D. Minn. 2013) ("ineffective assistance may arise only when *formal* plea offers have not been

communicated to defendants") (emphasis in original); *Barnes v. United States*, 2013 WL 3357925, at *7 (S.D.N.Y. July 2, 2013) ("The absence of a plea offer is fatal to the ineffective assistance of counsel claims made."). Because there was only one formal plea deal ever offered by the government, Petitioner's claim of prejudice — based on Mr. Dayan's sentence exposure advice regarding the later purported, informal plea discussions — fails. *See Lafler*, 132 S. Ct. at 1387 ("If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here [prejudice resulting from ineffective assistance of counsel] simply does not arise."); *Frye*, 132 S. Ct. at 1409-10 (discussing applicable prejudice under *Strickland* where an offered plea has lapsed or been rejected due to counsel's ineffectiveness); *see also Murph v. United States*, 12 F. Supp. 3d 557, 572 (E.D.N.Y. 2014) (noting Supreme Court holding that "that there can be no ineffective assistance of counsel claim if, as here, there is no actual plea offer that, but for the attorney's deficient assistance, would, with reasonable probability, have been accepted by the Defendant").

### b.  Petitioner Was Not Prejudiced by a Failure to Investigate

Petitioner also claims that his trial counsel was ineffective for failing to adequately investigate his case. He alleges that Mr. Dayan failed to review documents related to the fraud victims and that this shortcoming then prevented Mr. Dayan from obtaining any and all additional records from the financial institutions related to the criminal charges. (*Id.* at 30, 33.) Petitioner admits that the government subpoenaed these records, and produced them to defense counsel before trial. (*Id.* at 33.) Petitioner concedes that these records evinced Petitioner's knowledge of fraudulent activity.

Petitioner makes two specific claims of ineffective assistance of counsel based on Mr. Dayan's alleged failure to investigate. First, Petitioner argues that Mr. Dayan's purported failure

to investigate "left counsel uninformed as to the facts relevant to any decisions relating to the plea offers extended by the government." (*Id.* at 34.) As already discussed above, Petitioner's claim regarding the plea negotiations lack merit. Second, Petitioner argues that Mr. Dayan's purported failure to investigate is sufficient in and of itself for a finding of ineffective assistance of counsel. (*Id.* at 34.) The Court disagrees.

Petitioner merely asserts in a conclusory fashion that trial counsel failed to investigate his case competently. Although defense counsel does have a duty to investigate, that duty does not "compel defense counsel to investigate comprehensively every lead or possible defense . . . or to scour the globe on the off-chance something will turn up." *Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005) (internal quotation marks and citations omitted). In order to assert a colorable claim for the failure to investigate, a "petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." *Taylor v. Poole*, 2009 WL 2634724, at *14 (S.D.N.Y. Aug. 17, 2009) (collecting cases). Moreover, "[a] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Halo v. United States*, 2007 WL 1299158, at *13 (E.D.N.Y. Apr. 30, 2007) (citation omitted); *see also Petrucelli v. United States*, 2009 WL 4858081, at *10 (S.D.N.Y. Dec. 15, 2009) ("Where allegations of ineffective assistance are conclusory and give no indication as to what exculpatory evidence may have been revealed by an investigation, a Sixth Amendment ineffective assistance claim based on failure to investigate is doomed.").

Significantly, not only has Petitioner failed to point to any exculpatory information that may have been revealed, but the only specific evidence he discusses is inculpatory. (Pet. Mem.

at 33.) Thus, he "provides no reason for the court to believe that further investigation would have revealed additional information helpful to his case." *Donato v. United States*, 2012 WL 4328368, at *6 (E.D.N.Y. Sept. 20, 2012); *accord Miller v. New York*, 275 F. Supp. 2d 294, 298-99 (E.D.N.Y. 2003) ("Petitioner's conclusory claim that counsel was ineffective because he failed to investigate [. . .] could not merit granting of the writ because petitioner has failed to suggest any way in which further investigation or motion practice would have provided any benefit to petitioner's defense."). Petitioner's conclusory assertions that Mr. Dayan did not conduct an adequate investigation cannot meet the requirements of *Strickland's* prejudice prong. Accordingly, Petitioner's claim for failure to investigate is dismissed.

### c. Defense Counsel's Conduct at Trial Was Not Ineffective

Petitioner asserts that "Mr. Dayan's performance at trial, standing alone, was an inextricable component of the failed mechanism of his representation, giving meaning and substance to the other deficient aspects." (Pet. Mem. at 34.) Specifically, Petitioner's first complaint is with regard to Mr. Dayan's opening statement. He notes that Mr. Dayan "expressly pledged to deliver proof that could be predicated only upon Mavashev's testimony which counsel later admitted in no uncertain terms he did not know he would present." (*Id.* at 35-36) (noting Mr. Dayan's statements about Petitioner's upbringing and his dealings with Irina Khaimov). Petitioner adds, "There can be no articulable or acceptable strategic rationale for promising evidence which the defense itself was not yet sure it would or could deliver." (*Id.* at 40.) Finally, Petitioner contends that he decided not to testify on advice of counsel, which only compounded the problem with counsel's "flawed strategy" to "promise[] a version of events that could only be adduced through the defendant's testimony, at a junction at which the advent of his testimony was by no means certain." (*Id.* at 40.)

Scrutiny of defense counsel's performance is "highly deferential." *Strickland*, 466 U.S. at 689. Here, Petitioner's objections to defense counsel's performance focus on issues of trial strategy: the content of counsel's opening statement, and the decision for Petitioner not to testify. Petitioner's claim must fail, because displeasure with defense counsel's trial strategy is not sufficient to establish ineffectiveness under the stringent requirements of Strickland. *See United States v. Simmons*, 923 F.2d 934, 956 (2d Cir.1991). Additionally, he has not shown that trial counsel's assistance was unreasonable under all the circumstances. *See Strickland*, 466 U.S. at 688.

The decision as to whether to make an opening statement and its scope is a matter of trial strategy. *See, e.g., United States v. Kortright*, 2000 WL 232291 at *1 (2d Cir. Jan. 25, 2000) (rejecting ineffective counsel claim based on, *inter alia*, the content of counsel's opening statement and displeasure with defense counsel's trial strategy); *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("The decision whether to make an opening statement and when to make it is ordinarily a matter of trial tactics and strategy which will not constitute the incompetence basis for a claim of ineffective assistance of counsel."), *cert. denied*, 484 U.S. 1061 (1988); *Cromwell v. Keane*, 2002 WL 929536 at *23 (S.D.N.Y. May 8, 2002) ("Counsel's decision not to make an opening statement may be attributed to counsel's trial tactics.") (citing cases).

Although neither counsel nor the Court have discovered any Supreme Court or Second Circuit case on the issue of unfulfilled promises made at opening as ineffective assistance of counsel, a number of federal courts have considered the issues and provide some guidance as to what constitutes unreasonable assistance of counsel in such a circumstance. Petitioner relies on a number of these cases to support his proposition that "[t]he failure of counsel to produce

evidence which he promised the jury during his opening statement that he would produce is a damaging failure sufficient of itself to support a claim of ineffectiveness of counsel." (Pet. Mem. at 39.) Petitioner's analysis is flawed and his reliance on these cases is misguided.

Several of the cases relied on by Petitioner as support did not find ineffective assistance of counsel after a promise to the jury was not fulfilled. In *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166-67 (3rd Cir. 1993), counsel promised the jury an alibi defense. The court found that counsel made no promise to produce a specific witness's testimony, but used his opening statement as a recitation of evidence that would be and, in fact, was produced during the trial. The Eighth Circuit did not find ineffectiveness of counsel in *Williams v. Bowersox*, 340 F.3d 667 (8th Cir. 2003), where counsel told the jury specific witnesses would be called, but failed to call them. However, all witnesses mentioned by counsel were called by the state.

The cases cited by Petitioner where the courts did find ineffective assistance of counsel are distinguishable from the instant case. For example, in *Ouber v. Guarino*, 293 F.3d 19 (1st Cir. 2002), the First Circuit held that defense counsel's decision to withhold the defendant's testimony, after promising jurors during opening statement that they would hear it, constituted ineffective assistance of counsel. The court emphasized the unique circumstances presented in *Ouber*, namely that defense counsel had represented the defendant twice before; defendant testified at both trials; both trials had resulted in mistrials; and, during the defendant's third trial, defense counsel introduced the testimony of twenty-four character witnesses who attested to the defendant's reputation for veracity, thus setting the stage for the defendant's testimony by buttressing her credibility. *Id.* at 27-29. Having thus laid an elaborate foundation for defendant's testimony only to withhold it, the court concluded, "in the absence of unforeseeable events forcing a change in strategy, the sequence constituted an error in professional judgment."

*Id.* at 27.

In the instant case, Mr. Koppelman, in a detailed affidavit, explained that Petitioner originally told his lawyers that the charges against him were a result of his own naivety and negligence, but that he did not knowingly or intentionally participate in the fraud designed and carried out by Irina Khaimov and her employees. (Koppelman Aff. at 1.). Mr. Koppelman added, "Central to the defense was Mr. Mavashev's assurances to us that neither he nor his firm had been involved with fraud before his association with Khaimov and, unlike her, had never been involved with fraud after his association with her ended." (*Id.*) As a result of Petitioner's assurances, Mr. Koppelman notes, Petitioner and his counsel agreed that Petitioner's testimony was the only way to establish his defense and "agreed it was important to get the defense before the jury at the earliest possible time, the opening statement." (*Id.*) Mr. Dayan, in his detailed affidavit, provides substantially the same account as Mr. Koppelman. (Dayan Aff. at 5-7.)

Both attorneys recount that, while their initial strategy was based on the information they had at the time, they learned "shortly before the end of the presentation of the government's case . . . that Mavashev's assurances that he had never been associated with mortgage fraud before or after his association with Khaimov were not true." (Koppelman Aff. at 2; *see also* Dayan Aff. at 4-5.) Contrary to Petitioner's previous assertions, defense counsel became aware of Petitioner's involvement with mortgage fraud that occurred after Petitioner had severed ties with Khaimov. (Koppelman Aff. at 2; *see also* Dayan Aff. at 4-5.) Consequently, Mr. Dayan notes, "the backbone of the defense - that Roman Mavsahev had never been associated with mortgage fraud before or after his business relationship with Irina Khaimov - was shattered and he had to be counseled not to testify." (Dayan Aff. at. 5.) Mr. Koppelman makes clear that "it is for that

reason alone that the original intention to have him testify had to abandoned." (Koppelman Aff. at 2.)

Petitioner claims in his affidavit that Mr. Dayan told him he could never testify and that Mr. Dayan made that decision before the start of trial. (Pet. Aff. at 9.). Yet, contrary to this statement, Petitioner claims in his Memorandum of Law that the decision for him not to testify was made during the government's case and based on Mr. Dayan's conclusion that he had damaged the government's case sufficiently through cross-examination of cooperating witnesses. (Pet. Mem. 40-41.) Regardless of which account is accurate, the Court finds defense counsels' account of the strategic underpinning behind the opening statement and decision that Petitioner not testify more credible than Petitioner's self-serving, contradictory, and conclusory statements and an evidentiary hearing is not warranted. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). (finding that because defense counsel's "detailed description of events" was deemed more credible than petitioner's "self-serving and improbable assertions," an evidentiary hearing was unnecessary).

This is not a case where defense counsel amended defense strategy for no discernible reason. There is no credible evidence that Mr. Dayan changed his mind about the desirability of having Petitioner testify mid-way through the trial without appropriate justification, as did defense counsel in *Ouber*. To the contrary, Mr. Dayan's change in course is more akin to a change in trial strategy in which a potential defense put forth in the opening statement is later abandoned. *See, e.g.*, *Howard v. Davis*, 815 F.2d 1429, 1432-33 (11th Cir. 1987) (holding that counsel was not ineffective for having originally elected to pursue an insanity defense, but then deciding not to present the promised evidence when the insanity defense was abandoned). Moreover, his choice to advise Petitioner not to testify was not an unreasoned position, a sudden

change of heart, or a lingering afterthought that occurred to counsel only once his opening statement had been made. Rather, the decision that Petitioner not testify reflected a significant change in factual circumstances, occasionally by Petitioner's own lies to his attorneys, and reflected sound trial strategy. As such, while Mr. Dayan's decision to signal in his opening statement potential testimony from Petitioner may have been unwise, his performance was not deficient under the first prong of *Strickland*. Given this conclusion, it is unnecessary to determine whether Mr. Dayan's decision prejudiced Petitioner in his defense.

### d. Petitioner Was Not Prejudiced by the Conscious Avoidance Jury Charge

Petitioner also argues that Mr. Dayan was constitutionally ineffective for stating in his opening statement that Petitioner acted negligently with regard to the fraudulent mortgage transactions, which, Petitioner alleges, invited the government's ultimately successful request for the Court to provide an instruction on "conscious avoidance." (Pet. Mem. at 41-42.) Petitioner adds that his counsel was further deficient because he failed to object to the substance of the charge, which was erroneous under Second Circuit case law. (*Id.* at 42.) Petitioner's argument fails because he is unable to show that he was prejudiced by either his counsel's reference to his negligence or his counsel's failure to object to the substantive language of this charge.

Petitioner challenged the inclusion of the conscious avoidance charge on his direct appeal of his conviction to the Second Circuit. The Second Circuit found that the Court's inclusion of the conscious avoidance charge was not erroneous and was consistent with the overwhelming evidence of Petitioner's guilt. *United States v. Mavashev*, 455 Fed. Appx. 107, 110 (2d Cir. 2012). Indeed, the Second Circuit noted that, ". . . Mavashev concedes there was a factual basis for the charge of conscious avoidance." *Id.* at 110. While the Second Circuit did find that the Court's charge was erroneous in failing to require a finding that Petitioner was aware of the high

probability of the existence of the allegedly avoided fact, it held that this error was harmless for four reasons.  *Id.* at 110-111.  First, while the Court may have incorrectly defined conscious avoidance at the outset of the charge, "it only specifically cross-referenced that definition in connection with a single count, conspiracy to commit wire fraud.  With respect to the other counts, the Court defined 'knowledge' or 'knowing' correctly, without referencing the conscious avoidance charge."  *Id.* at 111.  Second, in defining bank fraud and wire fraud, the Court "repeatedly instructed the jury that in order to convict, the jury needed to find beyond a reasonable doubt that Mavashev 'acted with the specific intent to defraud,' and/or 'with the specific intent to deceive and to cause harm.'"  *Id.*  As the Second Circuit explained, the jury's guilty verdict on those counts reflects a finding that Petitioner "not only avoided confirming that the loan applications contained misrepresentations, but that he affirmatively desired to deceive the lenders in connection with those applications.  Such a finding presupposes actual knowledge that the loan applications were deceptive."  *Id.*

Third, as the government did not argue conscious avoidance at all in its summation, and relied instead exclusively on actual knowledge, it was "highly unlikely that the jury convicted Mavashev based on a conscious avoidance theory."  *Id.*  Lastly, "there was compelling evidence that Mavashev had actual knowledge that the loan applications were fraudulent."  *Id.* (citing *United States v. Aina-Marshall*, 336 F.3d 167, 171 (2d Cir. 2003) ("[A]n unwarranted conscious avoidance instruction is harmless error where there is overwhelming evidence of actual knowledge.").  Accordingly, Petitioner cannot show he suffered any prejudice as a result of Mr. Dayan's alleged deficiencies.[2]  Petitioner's claim regarding the conscious avoidance charge is dismissed.

---

[2]  Notably, Petitioner complains only of Mr. Dayan's performance in this regard, even though he also was represented by Mr. Koppelman, who actively participated in the trial.

### e.  **Petitioner Fails to Show Ineffective Assistance of Counsel Based on Cumulative Effect**

Petitioner contends that the cumulative weight of trial counsel's errors with regard to the plea negotiations and his conduct at trial amounted to ineffective assistance.  (Pet. Mem. at 34.) Indeed, the Second Circuit has held that alleged errors by counsel must be considered "in the aggregate" because "*Strickland* directs us to look at the 'totality of the evidence before the judge or jury,' keeping in mind that"'[s]ome errors [] have . . . a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture . . . ."  *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 695-96).  Accordingly, "[i]n evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the 'cumulative weight of error' in order to determine whether the prejudice 'reache[s] the constitutional threshold.'"  *Bligen v. Burge*, 2008 WL 5336693. at *6 (S.D.N.Y. Oct. 20, 2008) (quoting *Lindstadt*, 239 F.3d at 202) (Report and Recommendation), *adopted in part*, 2008 WL 5351995 (S.D.N.Y. Dec. 22, 2008).

Petitioner's argument that the cumulative effect of Mr. Dayan's alleged errors amounts to the denial of effective counsel is wholly without merit. The Court has dispensed with all of Petitioner's individual claims, finding them to lack basis in law and in fact.  Considering Petitioner's claims cumulatively does not change this analysis.  *See, e.g.*, *Castro v. United States*, 2013 WL 6508816, at *7 (S.D.N.Y. Dec. 11, 2013) (citing *Strickland*, 466 U.S. at 687-96) ("Such [a cumulative error] argument fails because, for the reasons set forth above, the Court finds that none of [petitioner's] allegations satisfy the requirements of *Strickland*—(1) performance that fell below an objective standard of reasonableness under prevailing professional norms; and (2) resulting prejudice."); *United States v. Wu*, 2009 WL 3053741, at *4 n. 4 (S.D.N.Y. Sept. 17, 2009) ("Since none of [petitioner's] claims has the slightest merit, his

[cumulative impact] claim . . . adds nothing to his argument.").  This claim is dismissed.

## III.    Evidentiary Hearing is Unnecessary

In addition to the existing record in this case, multiple sworn declarations and supporting documentation were reviewed while evaluating Petitioner's Section 2255 motion.  Accordingly, the Court concludes that an evidentiary hearing is unnecessary because Petitioner's motion and the record of this case conclusively demonstrate that he is entitled to no relief under Section 2255.

## CONCLUSION

For the reasons set forth above, Petitioner's request for relief pursuant to 28 U.S.C. § 2255 is denied in its entirety.  Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F. 3d 107, 112 (2d Cir. 2000).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated:  Brooklyn, New York
        March 31, 2015

_____/s/_____
        DORA L. IRIZARRY
        United States District Judge